UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

SCHWEGMANN FAMILY TRUST NO. 2                CIVIL ACTION

VERSUS                                                              NO. 06-4675

CIRCUIT CITY STORES, INC., ET AL                     SECTION "K"(2)

ORDER AND OPINION

Before the Court are the "Motion for Partial Summary Judgment to Compel Payment of Admitted Damages Under Insurance Policy and for Assessment of Penalties and Damages" filed on behalf of plaintiff Schwegmann Family Trust No. 2 (Doc. 21)("Trust") and the "Cross Motion for Partial Summary Judgment" filed on behalf of defendants Lexington Insurance Company ("Lexington"), Axis Specialty Insurance Company ("Axis"), Princeton E&S Insurance Company, ("Princeton") and U.S. Fire Insurance Company ("U.S. Fire") (Doc. 27). Having reviewed the pleadings, memoranda, and relevant law, the Court, for the reasons assigned, denies plaintiff's motion for partial summary judgment and grants defendants' motion in part.

BACKGROUND

Trust is the successor in interest to a 20 year land lease between Schwegmann Giant Super Markets ("Schwegmann") and Circuit City Stores, Inc. ("Circuit City") for property located at I-10 and Bullard Road. Pursuant to the lease Circuit City constructed a retail store on the property which is designated as Location 4500. It is undisputed that the lease required Circuit City to secure a policy of fire and extended insurance coverage for the property. In compliance with the lease, Circuit City obtained the necessary insurance. On August 29, 2005, Lexington, Axis,

Princeton, and U.S. Fire provided the insurance coverage for the property.

The property sustained significant damage during Hurricane Katrina. On September 26, 2005, Circuit City terminated its lease with Trust, agreed to make available to Trust all insurance proceeds regarding the casualty, and assigned to Trust all rights to receive future insurance proceeds payable as a result of Hurricane Katrina.

Thereafter Lexington retained Young and Associates to assist in the adjustment process. Young and Associates produced a "Preliminary Repair Estimate Summary" dated February 3, 2006, that established a replacement cost value of $1,578,868.00 for the property. Following receipt of that estimate, Trust made demand for that amount as the undisputed portion of the damages. In August 2006, Lexington tendered $395,000.00 to Circuit City which it in turn tendered that amount to trust.

Trust filed suit against Circuit City, Lexington, Axis, Princeton and U.S. Fire in August 2006, seeking, among other things, damages in the amount necessary to fully restore the property to its pre-storm condition as well as damages for failure to adjust and settle the claim fairly and promptly.

In early 2007 Young and Associates issued to Lexington a "Preliminary Repair Estimate with Costs Allocated Between 'Shell' and 'Tenant Improvement' With Actual Cash Value" which estimated the building's actual cash value as $728,519.00 and the tenant improvement actual cash value as $419,961.00. Apparently in response to that estimate, on March 19, 2007, the insurance companies tendered an additional $732,269.00 to Trust, bringing the total amount of insurance paid to Trust to $1,127,269, the actual cash value of the tenant improvements and the building.

Prior to receiving that payment Trust filed this motion for partial summary judgment

seeking an order that it be paid the balance of the replacement cost value on the property together with interest as well as penalties, attorney's fees pursuant to La. Rev. Stat. 22:658 and La. Rev. Stat. 22:1220..

Lexington, Axis, Princeton, and U.S. Fire (collectively "the Insurers") filed a cross motion for summary judgment seeking an order that Schwegmann Trust is not entitled to replacement cost value for the property damage until satisfactory proof of repairs has been made in accordance with the respective policies and dismissal of Trust's claims for statutory penalties under §658 and §1220.

## LAW AND ANALYSIS

The Federal Rules of Civil Procedure provide that summary judgment should be granted only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). The party moving for summary judgment bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the record which it believes demonstrate the absence of a genuine issue of material fact. *Stults v. Conoco, Inc.*, 76 F.3d 651, 655-56 (5th Cir.1996) (*citing Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 912-13 (5th Cir.1992) *(quoting Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)), cert. denied, 506 U.S. 832 (1992)). When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts. "[M]ere allegations or denials" are not sufficient to defeat a well-supported motion for summary judgment. Fed.R.Civ.P. 56(e). The nonmoving party must come forward with "specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (emphasis supplied); *Tubacex,*

*Inc. v. M/V RISAN*, 45 F.3d 951, 954 (5th Cir.1995).

Thus, where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no "genuine issue for trial." *Matsushita Elec. Indus. Co.*, 475 U.S. at 588. Finally, the Court notes that substantive law determines the materiality of facts and only "facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

a. Insurance Proceeds

The gravamen of the dispute between the Insurers and Trust is whether the building is properly classified as "real property" or as a "leasehold improvement" within the meaning of the policy. The classification is critical because it controls the valuation of the loss. The policy provides, in pertinent part, that:

> At the time of loss, the basis of adjustment, unless otherwise endorsed herein shall be as follows:
>
> A. *All real* and personal *property* shall be valued at replacement cost (without deduction for depreciation) provided the property is repaired or replaced on the same or any other site, otherwise the actual cash value except:
>
> (1) Inventory consisting of products and other merchandise for sale at Insured's cost plus except:
>
> (2) Raw stock and stock in process, the Insured's selling price less all discounts and unincurred expenses;
>
> (3) Customers' property which is under manufacturer's warranty at the Insured's cost plus 22%, all other customers' property at Replacement Cost;
>
> (4) Valuable papers and records and [sic] covered under Section 3F shall be valued at the cost to repair or replace the property with other of like kind and quality including the cost of gathering and/or recording or reconstructing information;

4

>    (5) Fine arts shall be valued at Replacement Cost;
>
>    (6) Property in Transit, *Leasehold Improvements*, Furniture and Fixtures,
>         Data processing equipment at Replacement Cost.

(emphasis added).  If the building qualifies as a "leasehold improvement" Trust has no obligation to replace or repair the property in order to recover the replacement cost of the loss.  If however, the building is properly classified as "real property" then Trust can recover the replacement value of the building only if it repairs or replaces the building, and the failure to repair or replace the building would limit Trust's recovery to the actual cash value of the property.

The determination of whether the building constitutes "real property" or a "leasehold improvement" necessarily involves the interpretation of the applicable insurance policy.  In this diversity action involving the interpretation of insurance policies issued in Louisiana, Louisiana's substantive law applies.  *Guidry v. American Public Life Insurance Company*, 512 F.3d 177, 181 (5th Cir. 2007).

> Under the Civil Code, the judiciary's role in interpreting insurance contracts is to ascertain the common intent of the parties to the contract.  The words of a contract must be given their generally prevailing meaning, and when the words of a contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties' intent.  Moreover, each provision in a contract must be interpreted in light of the other provisions so that each is given the meaning suggested by the contract as a whole.  Importantly, Louisiana law mandates that an insurance policy should not be interpreted in an unreasonable or strained manner so as to enlarge or to restrict its provisions beyond what is reasonably contemplated by its terms or so as to achieve an absurd conclusion.

*Coleman v. School Board of Richland Parish*, 418 F.3d 511, 516-17 (5th Cir. 2005) (internal quotations and citations omitted).

The policy's failure to define "leasehold improvement" renders the Court's analysis more difficult; however, the lack of a definition is not determinative of the issue.  *See   In Re: Katrina*

*Canal Breaches Litigation*, 495 F.3d 191, 207 (5th Cir. 2007) ("The fact that a term is not defined in the policy itself does not alone make that term ambiguous."). The policy provides coverage for "real property" and describes "real property" as including "improvements and betterments; owned, used or intended for used by the Insured...." Using that description, the building clearly qualifies as "real property." The policy's description of real property is consistent with Louisiana law, under which a building erected on land constitutes an immovable by nature regardless of whether it was erected by the owner of the property or by a tenant of the property. *Lighting Supply Company v. Pacific Fire Insurance Co. of New York*, 144 So.2d 35, 37 (La. 1932).     T h e conclusion that the building constitute "real property" is reinforced by examining the policy as a whole. Clause 6F of the policy excludes coverage for loss or damage to "[l]and and water." Considering that exclusion, if the entire building qualifies as a "leasehold improvement" then the portion of the policy that provides coverage for "real property" including "improvements and betterments" is meaningless with respect to insureds who are lessees of property. In contrast, interpreting the policy to classify buildings as "real property" does not adversely impact the policy provision applicable to valuation of "leasehold improvements." The term "leasehold improvements" includes encompasses a broad spectrum of property. Eliminating buildings from that spectrum does not render the valuation provision for "leasehold improvements" meaningless.

Moreover the structure of the valuation provision of the policy also supports a conclusion that the building is properly classified as "real property" and not as a leasehold improvement. Clause 7A sets forth the general rules that apply to valuing property. It states that *"[a]ll real* and personal *property* shall be valued at replacement cost (without deduction for depreciation) provided

the property is repaired or replaced on the same or any other site, otherwise the actual cash value except:" Subsections (1) - (6) of Clause 7A enumerate the exceptions to the general rule stated in Clause 7A. Each of the stated exceptions identifies property which can be properly classified as movable property. It is well established under Louisiana law that leasehold improvements may be movable property. Thus, it is reasonable to conclude that exception for "leasehold" improvements" is limited to movable leasehold improvements. It is significant that the exception for "leasehold improvements" is not set off in a separate exception. Rather, it is listed as part of the sixth exception along with three classes of property generally considered to be movables, i.e., property in transit, furniture and fixtures, and data processing equipment. Considering the policy as a whole, the Court concludes that the property at issue is "real property" as described in the policy and not a "leasehold improvement." Therefore, Trust is not entitled to replacement cost value for the property absent proof that it has repaired or replaced the property.

### b) PENALTIES

Trust seeks penalties and attorneys fees pursuant to La. Rev. Stat. 22:658 which provides that certain types of insurers "shall pay the amount of any claim due any insured within thirty days after receipt of satisfactory proof of loss from the insured or any party in interest," and that if the failure to make such a payment timely is found to be arbitrary, capricious, or without probable cause, the insurer shall be liable for specific penalties enumerated in the statute. Trust also seeks penalties pursuant to La. Rev. Stat. 22:1220 which imposes on insurers a duty to "adjust claims fairly and promptly and to make a reasonable effort to settle claims with the insured or the claimant, or both." An insurer breaches that duty by "[f]ailing to pay the amount of any claim due any person insured by the contract within sixty days after receipt of satisfactory proof of loss from the

claimant when such failure is arbitrary, capricious, or without probable cause. La. Rev. Stat. 22:1220(B)(5). Breach of the described duty entitles the claimant to "general or special damages as to which a claimant is entitled " as well as penalties as enumerated in the statute. La. Rev. Stat.22:1220(C).

In this motion Trust based its claim for penalties solely on the Insurers failure to timely tender payment of $1,183,678.00, the difference between the $375,000.00 tendered by Lexington in August 2006 and the estimated replacement value in Young & Associates "Preliminary Detailed Repair Estimate" issued on February 3, 2006. Because plaintiff is not, entitled to replacement value for the loss until the property is repaired or replaced, and it is undisputed that Trust has not repaired or replaced the property, plaintiff is not entitled to penalties for Insurers failure to tender the $1,183,678.00.

Plaintiff may well be entitled to statutory penalties for Insurers failure to tender the undisputed portion of the actual cash value of the loss prior to March 19, 2007. However, in this motion plaintiff did not seek statutory penalties related to an alleged failure to timely tender the undisputed portion of the actual cash value of the loss. Additionally, the present record does not include sufficient competent evidence for the Court to determine whether the Insured failed to make a payment timely, and if so, whether the Insureds acted arbitrarily, capriciously, and without probable cause in failing to tender the undisputed portion of the actual case value prior to March 19, 2007.

While it appears that Young & Associates "Preliminary Repair Estimate Summary With Costs Allocated Between 'Shell' and "Tenant Improvement' With Actual Cash Value" existed as

of January 5, 2007,[1] there is no competent Rule 56 evidence establishing the date that Young & Associates issued the estimate. Absent competent evidence of that date or competent evidence of the date that plaintiff submitted satisfactory proof of loss, the Court cannot determine whether the March 19, 2007, payment was untimely, which is necessarily the starting point of any analysis of a plaintiff's entitlement to statutory penalties under §658 and §1220.

For the reasons stated herein above, the Court denies plaintiff's motion for partial summary judgment and Insured's cross motion for partial summary judgment to the extent that it seeks to dismiss plaintiff's claim for statutory penalties under La. Rev. Stat. 22:658 and La. Rev. Stat. 22:1220. Accordingly,

**IT IS ORDERED** that the motion for partial summary judgment filed on behalf of plaintiff Schwegmann Family Trust No. 2 (Doc. 21) is Denied;

**IT IS FURTHER ORDERED** that the cross motion for partial summary judgment filed on behalf of defendants Lexington Insurance Company, Axis Specialty Insurance Company, Princeton E&S Insurance Company, and U.S. Fire Insurance Company (Doc. 27) is Granted to the extent that it seeks an order that plaintiff is not entitled to replacement cost value of the loss until it provides satisfactory proof that it has repaired or replaced the property.

**IT IS FURTHER ORDERED** that defendants' motion for partial summary judgment is Denied in all other respects.

New Orleans, Louisiana, this 11th day of June, 2008.

_____
STANWOOD R. DUVAL, JR.
UNITED STATES DISTRICT JUDGE

---

[1] On the lower left hand corner of the estimate the following statement appears: "File: Young Circuit City New Orleans Draft Repair With ACV 1 05 07."

9