UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

**SCHWEGMANN FAMILY TRUST NO. 2**                         **CIVIL ACTION**

**VERSUS**                                       **NO. 06-4675**

**CIRCUIT CITY STORES, INC., ET AL**                         **SECTION "K"(2)**

## ORDER AND OPINION

Before the Court are the "Motion in Limine to Limit the Testimony of Don C. Kotter"(Doc. 146) filed on behalf of defendant Circuit City Stores, Inc. Having reviewed the pleadings, memoranda, and relevant law, the Court, for the reasons assigned, **DENIES** the motion.

### BACKGROUND

Schwegmann Family Trust No. 2 ("Trust") is the successor in interest to a 20 year land lease between Schwegmann Giant Super Markets and Circuit City Stores, Inc. ("Circuit City") for property located at I-10 and Bullard Road. Pursuant to the lease Circuit City constructed a retail store on the property which is designated as Location 4500. Clause 15(b) of the lease provides, in pertinent part that:

> (b) Forty Percent (40%) or More Following Ten Lease Years. In the event of fire, hurricane, flood, earthquake or other casualty causing destruction or damage to the Improvements which both (i) has a repair and reconstruction cost of forty percent (40%) or more of the then-total reconstruction cost of the Improvements and (ii) occurs following the first ten (10) Lease Years, Tenant shall have the option of terminating this Lease.

More than ten (10) years after the commencement of the lease, the property sustained significant damage during Hurricane Katrina. On September 26, 2005, Circuit City terminated its lease with Trust. Thereafter, Trust filed suit against Circuit City to, among other things, enforce the lease and have Circuit City repair the building.

The critical inquiry with regard to Trust's claim for breach of lease is whether the cost to repair

the hurricane damage is forty percent (40%) or more of the reconstruction cost of the building. Trust retained Don Kotter and his brother Jim Kotter to prepare an estimate of the cost to repair the building as well as an estimate of the cost to reconstruct the Circuit City store. Trust intends to offer the Kotters as experts in "repair and construction costs." Doc. 152, p. 2.

Don Kotter is a licensed independent property and casualty adjustor in Louisiana, Texas, and Florida. He has also worked at a consultant and an estimator. Deposition of Don Kotter, p. 59-60. In preparing their estimates, Don Kotter and Jim Kotter measured the building and noted the damages to the building. They

> inputted the information that we obtained and wrote down in our notes and put it into our program, into our computer, contacted local different entities that might be involved with the project. For instance, the security doors that are on there, wanted to get an accurate cost for those, so we made a call to a company that provides the same type security doors. Spoke with the electrician after we compiled our estimate, let him know – a Louisiana licensed electrician what we came up with on the cost to do that store, asked if had would be interested in the future to do the electrical work on it and could he do it for the price that we had and he said yes.

*Id.* at 185. In developing their estimates the Kotter brothers used the Xactimate computer program. Don Kotter described the function of Xactimate as follows:

> I input the line items and the program determines the quantity on most of it. On some of it we put quantities, but most of it is square foot. So we measure a building, dimensionalize it, input the dimensions and then the rest is mathematical within the system. It's like using a calculator. It calculates it for us.

*Id.* at 191. Don Kotter did not independently calculate the dimensional and quantity information determined by the Xactimate program; however, he did "double check" the measurements that he inputted into the program, testifying "I field measured it and then I inputted the measurements and then I looked at it and looked at mine to make sure that the measurements I put in were the measurements that were. I

double-checked my own work as I input it." *Id.* at 223.

The Xactimate program includes pricing schedules for construction materials. Don Kotter testified that "[Xactimate] do[es] the research. They get the pricing for the New Orleans metropolitan area and that's what is used in the program. Every quarter it's updated." *Id.* at 208-09. He also testified that Xactimate uses "industry standards" as its source of information for pricing. *Id.* Don Kotter testified that he is not familiar with the process the Xactimate uses for pricing. *Id.* Don Kotter accepted Exactimate's pricing and did not independently verify the pricing programmed into Xactimate. *Id.* at 216. There were however, three items (security doors and two commercial grade locksets) for which Don Kotter independently obtained pricing information. *Id.* at 245-46. Additionally Don Kotter testified that he priced the electrical costs using Xactimate, and "verified that a local electrician, electrical company, could do the work for the Xactimate price." *Id.* at 310. Don Kotter acknowledges that "I didn't create the [Xactimate] database. All I did was print out the database." *Id.* at 354.

Don Kotter's deposition establishes that either he or his brother determined what items needed to be repaired or used to reconstruct the building, and that they inputted those specific items into Xactimate, and in some cases the quantity of the item needed, e.g. number of toilets, number of steel racks, commercial grade carpeting. *Id.* at pgs. 75-76, 208. Don Kotter testified "I wrote what I saw and I priced what I saw." *Id.* at 247.

Circuit City moves to exclude the testimony of Don Kotter relative to pricing contending that the pricing data and information he relied upon "is provided by another, non-testifying expert, namely Exactimate" and therefore fails to satisfy the requirements of Federal Rule of Evidence 703. Doc. 146, p. 1. Circuit City also seeks to exclude on the same basis the testimony of Jim Kotter to the extent that Trust No. 2 seeks to introduce the testimony of Jim Kotter.

Schwegmann opposes the motion urging that the use of Xactimate and other similar services are "standard in the estimating procedures and accepted as an accurate reflection of the individual items for the repair costs." Doc. 152, p. 5.

## LAW AND ANALYSIS

Rule 703 of the Federal Rules of Civil Procedure provides:

> The facts or data in the particular case upon which an expert bases an opinion or inference may be those perceived by or made known to the expert at or before the hearing.  If of a type reasonably relied upon by experts in the particular field in forming opinion or inferences upon the subject, the facts or data need not be admissible in evidence in order for the opinion or inference to be admitted. Facts or data that are otherwise inadmissible shall not be disclosed to the jury by the proponent of the opinion or inference unless the court determines that their probative value in assisting the jury to evaluate the expert's opinion substantially outweighs their prejudicial effect.

Thus, Rule 703 permits an expert in offering his opinion to rely upon evidence which would not normally be admissible, if that evidence is of a type reasonably relied upon by experts in a particular field. Xactimate's pricing program is widely used by both insurance adjusters and individuals in the construction industry to calculate estimates for building repairs and construction costs.  The pricing date utilized in Xactimate , and relied upon by the Kotters, is "of a type reasonably relied upon by experts in the particular field." Therefore, the Court denies Circuit City's motion in limine.

New Orleans, Louisiana, this 14th day of July, 2008.

STANWOOD R. DUVAL, JR.
UNITED STATES DISTRICT JUDGE