UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

**SCHWEGMANN FAMILY TRUST NO. 2**           **CIVIL ACTION**

**VERSUS**                                  **NO. 06-4675**

**CIRCUIT CITY STORES, INC., ET AL**        **SECTION "K"(2)**

## ORDER AND OPINION

Before the Court is the "Motion *In Limine* To Exclude The Testimony of Woodrow Wilson Construction Company, Inc., and Woodrow Kurt Wilson" filed on behalf of defendant Circuit City Stores, Inc. (Doc. 145). Having reviewed the pleadings, memoranda, and relevant law, the Court, for the reasons assigned, **DENIES** the motion.

## BACKGROUND

Schwegmann Family Trust No. 2 ("Trust") is the successor in interest to a 20 year land lease between Schwegmann Giant Super Markets and Circuit City Stores, Inc. ("Circuit City") for property located at I-10 and Bullard Road. Pursuant to the lease Circuit City constructed a retail store on the property which is designated as Location 4500. Clause 15(b) of the lease provides, in pertinent part that:

> (b) Forty Percent (40%) or More Following Ten Lease Years. In the event of fire, hurricane, flood, earthquake or other casualty causing destruction or damage to the Improvements which both (i) has a repair and reconstruction cost of forty percent (40%) or more of the then-total reconstruction cost of the Improvements and (ii) occurs following the first ten (10) Lease Years, Tenant shall have the option of terminating this Lease.

More than ten (10) years after the commencement of the lease, the property sustained significant damage during Hurricane Katrina. On September 26, 2005, Circuit City terminated its lease with Trust. Thereafter, Trust filed suit against Circuit City to, among other things, enforce the lease and have Circuit

City repair the building.

The critical inquiry with regard to Trust's claim for breach of lease is whether the cost to repair the hurricane damage is forty percent (40%) or more of the reconstruction cost of the building. Trust retained Kurt Wilson to estimate the cost to construct a new building to replace the damaged Circuit City store.

Circuit City seeks to exclude Kurt Wilson's testimony contending that his opinion is "wholly unreliable under *Daubert v. Merrell Dow Phar. Inc.,* 509 U.S. 579, 113 S. Ct. 2786, 125 L. Ed.2d 469 (1999) and its progeny. . .." Doc. 145, p. 1. Circuit City does not challenge the relevance of Kurt Wilson's testimony.

## LAW AND ANALYSIS

"Trial courts have 'wide discretion' in deciding whether or not a particular witness qualifies as an expert under the Federal Rules of Evidence. " *Hidden Oaks Limited v. City of Austin*, 138 F. 3d 1036, 1050 (5th Cir. 1998). Federal Rule of Evidence 702 states:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based on sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

The rule reflects the Supreme Court's decisions of *Daubert*, 509 U.S. 579, 113 S. Ct. 2786 (1993) and *Kuhmo Tire Co. v. Carmichael*, 526 U.S. 137, 119 S. Ct. 1167 (1999). *Daubert* charges trial courts to act as "gate-keepers" to ensure that the proffered expert testimony is both relevant and reliable. *Daubert*, 509 U.S. at 589, 592-93, 113 S. Ct. at 2795, 2796. The relevant and reliable standard announced in *Daubert* for scientific expert testimony applies to all types of expert testimony. *Kumho Tire Co. v. Carmichael*, 526 U.S. at 147, 119 S. Ct. at 1171.

*Daubert* provides a two-prong test for determining the admissibility of expert testimony. The court "must determine at the outset, pursuant to Rule 104(a), whether the expert is proposing to testify to (1) scientific knowledge that (2) will assist the trier of fact to understand or determine a fact in issue." *Daubert*, 509 U.S. at 592, 113 S. Ct. at 2796. Both prongs of the *Daubert* test must be satisfied before the proffered expert testimony may be admitted. *Id.* at 595, 113 S. Ct. at 2796. This analysis "entails a preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid and of whether that reasoning or methodology properly can be applied to the facts in issue." *Id.*

Thus, the first prong of *Daubert* focuses on whether the expert testimony is based on a reliable methodology. In determining an expert's reliability, the Court's focus "must be solely on principles and methodology, not on the conclusions that they generate." *Id.* at 595, 113 S. Ct. at 2797, 125 L.Ed.2d at 484. The second prong, i.e., whether the proposed testimony will assist the trier of fact to understand or determine a fact in issue, goes primarily to the issue of relevancy. *Daubert*, 509 at 591. Indeed, this examination is described in *Daubert* as whether expert testimony proffered in the case is sufficiently tied to the facts of the case that it will aid the jury in resolving a factual dispute. *Id., citing United States v. Downing,* 753 F.2d 1224, 1242 (3rd Cir. 1985). Federal Rule of Evidence 401 defines "relevant evidence" as that which has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."

When expert testimony is challenged under *Daubert*, the burden of proof rests with the party seeking to present the testimony. *Moore v. Ashland Chemical, Inc.*, 151 F.3d 269 (5th Cir. 1998). To meet this burden, a party cannot simply rely on its expert's assurances that he has utilized generally accepted scientific methodology. Rather, some objective, independent validation of the expert's methodology is required. *Id.* Nonetheless, as Judge Vance stated in *Scordill v. Louisville Ladder Group, L.L.C.*, 2003

WL 22427981 at *3 (E.D. La. October 24, 2003):

> The Court notes that its role as a gatekeeper does not replace the traditional adversary system and the place of the jury within the system. *See Daubert*, 509 U.S. at 596. As the *Daubert* Court noted, "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Id*. (citing *Rock v. Arkansas,* 483 U.S. 44, 61, 107 S. Ct. 2704, 97 L.Ed.2d 37 (1987)).  The  Fifth Circuit has added that, in determining the admissibility of expert testimony, a district court must defer to "'the jury's role as the proper arbiter of disputes between conflicting opinions.  As a general rule, questions relating to the bases and sources of an expert's opinion rather than its admissibility and should be left for the jury's consideration.'"  *United States v. 14.38 Acres of Land, More or Less Sit. in Leflore County, Miss.*  80 F.3d 1074, 1077 (5th Cir. 1996) (quoting *Viterbo v. Dow Chemical Co.*, 826 F.2d 420, 422 (5th Cir. 1987).

Kurt Wilson has been employed at Wilson Construction Company, Inc. ("Wilson Construction") continuously since 1971. Wilson Construction is a general contractor whose average annual amount of construction work performed during the past five years is between $45,000,000.00 and $46,000,000.00. Deposition of Kurt Wilson, p. 16.   In addition to performing as a general contractor, Wilson Construction self-performs concrete and carpentry work as well as finishing work including hanging doors, installing hardware, installing toilet accessories and toilet partitions, putting up cabinetry, paneling, finish work and millwork. *Id.*

During his employment with Wilson Construction, Kurt Wilson has performed construction work and acted as a superintendent, a foreman, and a project manager in addition to bidding jobs and supervising jobs that he has bid. *Id*. at 17-18.  He currently serves as the vice president of Wilson Construction. *Id.* at 14.

Mr. Wilson has not inspected Store 4500; however, he did "briefly" review the plans for that store. *Id.* at 21. Kurt Wilson has opined that the cost to build a new Circuit City building in New Orleans East would be $150.00 to $175.00 per square foot. *Id.* at 41.  He included all of the subcontractor costs in his estimate.  *Id*. at 54.  He described the process he used to arrive at that range as follows:

> John Schwegmann called me and told me – asked me what did I think it would cost to build a new Circuit City store in New Orleans East, and he gave me the rough size of the building. We kind of talked about, a little bit about what kind of goes into a Circuit City store briefly over the phone. And I told him to let me think about it a little bit and I would talk it over with my brothers and I would call him back.
>
> And so I had a discussion with my two brothers and we came up with the money amounts that's in my first letter and I called him back and told him that. And then he asked if I would put it down in writing and send it to him.
>
> . . .
>
> I never heard anything more for a good while. And then Mr. Ellis contacted me and told me he was counsel for Schwegmann on the matter and he asked me – he wanted to bring by a set of plans for me to look at and to reiterate to him that my numbers that I wrote in my first letter were still consistent. And so he dropped off the plans at my office and I looked through them and then I issued by second letter. . . .

*Id.* at 24-25.[1] Kurt Wilson also testified that "[i]ts all an estimate here, you know, an educated estimate. That's what I'm giving here on what I think it would cost." *Id.* at 42. In reaching his estimate Kurt Wilson considered post Hurricane Katrina economic and construction conditions, the use of architectural precast walls for the exterior walls, the additional electrical requirements for a Circuit City store, and the extra cost for the foundation of a store in the New Orleans area. Doc. 145-4. He testified that a "ball park" estimate of the additional foundation cost for the store "could run $8 - $10 a square foot more in New Orleans." Deposition of Kurt Wilson, p. 47. In further describing his estimating process, Mr. Wilson stated:

> I didn't look at my $150 a square foot number and say, now, how much for the foundation, how much for the tilt-up, how much for the roof, how much

---

[1] The "first letter," dated September 27, 2006 states a cost "between $150.00 and $175.00 per square foot for a 33,500 square foot building. Doc. 145-4. Thereafter Mr. Wilson wrote a letter dated December 6, 2007 "reiterat[ing] my ball park cost to construct a new Circuit City store in the New Orleans East Area would cost between $150.00 and $175.00 per square foot." Doc. 145-3.

5

>for the electrical, how much for the mechanical, how much for the plumbing, the floors, the acoustical ceilings, the drywall. I didn't break it down. I looked at an overall number of what it would cost in my opinion for that type of store – as a contractor, what it would cost to build that type of store per square foot.

*Id.* at 48.  Mr. Wilson concedes that to provide an exact price he would need to do a more detailed review of a complete set of plans and specifications. *Id.* at 57.  However, he stated "I'm going to say Woodrow Wilson would build that store for between 150 and 175 a square foot." *Id.* at 41.

Although Kurt Wilson did not prepare his estimate by pricing every item of material, labor, and overhead necessary for building a new Circuit City store, his opinion is nonetheless reliable for purposes of *Daubert*.  His opinion is based on his review, albeit brief, of the plans for the present store, as well as his very considerable experience in construction and the experience of Wilson Construction, a well established, successful general contractor.  Mr. Wilson's deposition testimony establishes that his experience and that of Wilson Construction is not limited to general construction work. While neither Kurt Wilson nor Wilson Construction have constructed a Circuit City store, Kurt Wilson has built a Schwegmann Giant Supermarket in New Orleans East and bid and built similar "retail box stores," i.e., Wal-Marts.  Thus Kurt Wilson has experience with the pricing considerations applicable to large retail store construction.

Moreover, the reliability of Kurt Wilson's opinion is bolstered by his testimony that "Woodrow Wilson would build that store for between 150 and 175 a square foot. *Id.* at 41.  That testimony establishes Kurt Wilson's estimate to be more than a speculative estimate of the cost of building the new Circuit City store.

Circuit City cites *Hebbler v. Turner*, 2004 WL 414821 (E.D. La. March 3, 2004) in support of its assertion that Kurt Wilson's testimony should be excluded as devoid of any methodology and based solely

upon his subjective knowledge.  However, Kurt Wilson's opinion can be readily distinguished from that offered and rejected in *Hebbler*.  In *Hebbler* the Court concluded that a commercial real estate agent was not qualified under *Daubert* to offer an opinion as to whether the rate charged for rent for certain properties was fair and consistent with market values.  In reaching its conclusion, the Court noted that the proposed expert, who was neither a licensed appraiser not a licensed real estate broker, failed to demonstrate that she employed generally accepted methods of commercial lease apprisal, failed to illustrate a reliable adherence to real estate valuation methodology, and neglected to provide comparable property listing or valuation formulas in arriving at her opinion.  *Id*. at \*4.

Here, as discussed herein above, Kurt Wilson has demonstrated specific experience in constructing buildings similar to the building for which he has provided an estimate for construction costs.  Moreover, the subject matter of his expert opinion - estimating construction costs,  is by its nature not as subjective as the opinion  involved in *Hebbler*.

Kurt Wilson's testimony is sufficiently reliable to warrant presentation to the jury, where it will undoubtedly be challenged through vigorous cross-examination and Circuit City's presentation of contrary evidence.  Ultimately, the jury will assess Mr. Wilson's testimony and determine the weight, if any, to accord his opinion.   Accordingly, the motion is **DENIED.**

New Orleans, Louisiana, this 16th day of July, 2008.

STANWOOD R. DUVAL, JR.
UNITED STATES DISTRICT JUDGE